595 S.E.2d 827

**Calvin L. JETER and Quantilla B. Jeter, Respondents,**

v.

**The SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Appellant,**

v.

**Phyllis P. Brown, Respondent.**

**No. 3762.**

Court of Appeals of South Carolina.

Heard Jan. 14, 2004.

Decided March 22, 2004.

Rehearing Denied May 20, 2004.

---

Andrew F. Lindemann, of Columbia, and Charles V. Verner, of Newberry, for Appellant.

Albert V. Smith, of Spartanburg, and Henry Hammer, Howard Hammer and Arthur K. Aiken, all of Columbia, for Respondents.

GOOLSBY, J.:

This is an action under the South Carolina Tort Claims Act. The South Carolina Department of Transportation (SCDOT) appeals the damages awards to Calvin L. Jeter, Quantilla Jeter, and Phyllis P. Brown, arguing the trial court erred in (1) moving the action to Fairfield County, (2) directing a verdict on the issue of Brown's negligence, and (3) refusing to charge the defense of unavoidable accident. We affirm in part, reverse in part, and remand.

## FACTS

Calvin Jeter was operating a motorcycle on Secondary Road 37, also known as Herbert Road, in Union County on July 12, 1997. SCDOT had recently resurfaced a portion of the road and left behind loose gravel. Phyllis Brown, Jeter's sister, was driving her vehicle in the opposite direction when she saw a deer on the side of the road and applied her brakes. Brown lost control of her car, which collided with Jeter's motorcycle before falling down a ravine.

Several people who saw the road at or near the time of the accident testified there was enough loose gravel on the road to scoop up handfuls of it. At trial, there was conflicting testimony from eyewitnesses and SCDOT employees regarding whether any signs warning of loose stones were posted at the

time of the accident. Brown maintained excess gravel left on the road during the resurfacing caused her car to swerve into Jeter's lane of travel when she applied her brakes.

Jeter and his wife Quantilla filed two complaints against SCDOT in the Union County Court of Common Pleas under the South Carolina Tort Claims Act, alleging SCDOT had failed to maintain the road in a safe condition and to warn travelers on the road that dangerous conditions existed. Contending Brown was a necessary party to the litigation so as to allow for apportionment of fault under section 15–78–100(c) of the Act,[1] SCDOT filed a third-party complaint in each action naming Brown as a third-party defendant. Brown then filed an answer and counterclaim against SCDOT under the Act for personal injuries she allegedly sustained during the accident.

Brown later settled with the Jeters and then moved under Rule 12(b)(6), SCRCP, to dismiss the third-party complaint filed against her. The trial court ruled that, under Rule 19, SCRCP, Brown was a necessary party to the action "solely for the purposes of satisfying the statutory requirement of section 15–78–100(c), that the trier of fact must apportion liability in a special verdict specifying the proportion of monetary liability of each defendant."

Brown then filed an amended answer and counterclaim, in which she objected to venue in Union County. Several days later, she moved for a change of venue to Fairfield County based on the fact that she was a resident of that county. Over SCDOT's objection, the trial court granted the motion and transferred the case to Fairfield County.

During the merits hearing, Brown moved for directed verdicts on the issue of her negligence and SCDOT's defense of unavoidable accident. The Jeters joined in the motions. After hearing arguments from counsel, the trial court granted both motions. Based on the finding that Brown was not negligent as a matter of law, the trial court declined to submit

---

1. Section 15–78–100(c) of the South Carolina Tort Claims Act provides that "[i]n all actions brought pursuant to this chapter when an alleged joint tortfeasor is named as party defendant in addition to the governmental entity, the trier of fact must return a special verdict specifying the proportion of monetary liability of each defendant against whom liability is determined." S.C.Code Ann. § 15–78–100(c) (Supp.2003).

to the jury a special verdict form that would have allowed the jury to apportion fault pursuant to South Carolina Code section 15–78–100(c).

The jury returned verdicts of $1,950,000 for Calvin Jeter, $100,000 for Quantilla Jeter, and $150,000 for Brown. By consent order, the trial court reduced the verdicts in accordance with the statutory caps set forth in the Act.[2] After unsuccessfully moving for a new trial absolute on numerous grounds, SCDOT filed this appeal.

## LAW/ANALYSIS

■ 1. SCDOT argues the trial court erred in trying the case in Fairfield County instead of Union County. We disagree.

The Jeters brought this action under the South Carolina Tort Claims Act. Section 15–78–100(b) of the Act provides that "[j]urisdiction for any action brought under this chapter is in the circuit court and brought in the county in which the act or omission occurred."[3]

SCDOT argues section 15–78–100(b) "provides that only the Circuit Court in the county where the act or omission occurred has subject matter jurisdiction over an action brought pursuant to the Tort Claims Act." According to SCDOT's reasoning, because the accident occurred in Union County, the Union County Court of Common Pleas had exclusive subject matter jurisdiction to hear this action.

■ We agree, however, with Brown and the Jeters that section 15–78–100(b) addresses the issue of jurisdiction only so far as to confer jurisdiction to hear such cases in the "circuit court"[4] while the remaining language in that section, "and

---

2. *See* S.C.Code Ann. § 15–78–120 (Supp.2003) (limiting liability "[f]or any action or claim for damages brought under" the South Carolina Tort Claims Act).

3. S.C.Code Ann. § 15–78–100(b) (Supp.2003).

4. *See* S.C. Const. Art. V, § 1 ("The judicial power shall be vested in a unified judicial system, which shall include a Supreme Court, a Court of Appeals, a Circuit Court, and such other courts of uniform jurisdiction as may be provided for by general law.").

brought in the county in which the act or omission occurred," addresses the issue of venue.[5] The caption to section 15–78–100 reads in pertinent part "When and where to *institute* action."[6] Moreover, nothing in part (b) of the statute can be read to require that a case arising under the Act must be "heard" or "tried" in "the county in which the act or omission occurred."[7]

We therefore hold section 15–78–100(b) did not prohibit the trial court from considering Brown's motion to change venue. Moreover, considering the fact that Brown resided in Fairfield County, we hold the trial court acted within its discretion in granting the motion.[8] Because the action was originally brought in Union County, where the accident occurred, we further hold the requirements of section 15–78–100(b) were satisfied.[9]

---

5. See *Ellis v. Oliver*, 307 S.C. 365, 367, 415 S.E.2d 400, 401 (1992) (citing section 15–78–100(b) for the proposition that under the Tort Claims Act, *"venue* is proper where the act or omission occurred") (emphasis added).

6. S.C.Code Ann. § 15–78–100 (Supp.2003) (emphasis added).

7. See *In re Asbestosis Cases*, 276 S.C. 579, 581, 281 S.E.2d 112, 114 (1981) (" 'Venue' refers to the county where the action should be *brought."*) (emphasis added).

8. See S.C.Code Ann. § 15–7–30 (1976) (stating "the action shall be tried in the county in which the defendant resides at the time of the commencement of the action"); *Durant v. Black River Elec. Co-op.*, 271 S.C. 466, 467, 248 S.E.2d 264, 265 (1978) ("It is well settled that motions to change the venue of a trial are addressed to the sound discretion of the trial court."); *McKissick v. J.F. Cleckley & Co.*, 325 S.C. 327, 334, 479 S.E.2d 67, 70 (Ct.App.1996) ("Where the facts concerning a defendant's residence are uncontradicted, the trial court must, as a matter of law under § 15–7–30, change venue to the county where the defendant resides.").

9. SCDOT further argues that, even under the interpretation of section 15–78–100(b) as a venue provision, the trial court's decision to transfer venue was error because (1) when the action was commenced, the sole defendant was SCDOT, for whom venue was proper in Union County and (2) Brown's residence in Fairfield County should not have "trumped" the Jeters' original venue choice. Although these arguments appear in SCDOT's new trial motion, there is nothing in the record to indicate that they were expressly raised to the trial court before it issued the order transferring the case to Fairfield County. Because these arguments concern venue rather than subject matter

■ 2. We agree, however, with SCDOT's argument that the trial court erred in directing a verdict in favor of Brown on the issue of her negligence and in not allowing the jury to apportion fault among all potential tortfeasors, including Brown, as provided in South Carolina Code section 15–78–100(c).[10]

■ In South Carolina, motorists have a common law duty to keep a reasonable lookout to avoid hazards on the roadway.[11] In addition, motorists are required by statute to adjust their speeds to reasonable and prudent levels considering the "actual and potential hazards then existing"[12] and to drive their vehicles within their lanes of travel.[13]

Several witnesses testified "loose stone" warning signs were in place at the time of the accident. Larry Crocker, a sign foreman for SCDOT, testified he was working in the area the day before the accident and made sure signs warning of loose stones were in place. In addition, Junior Jenkins, who worked on Crocker's crew, testified "they have to put the signs up before anything hits the highway." Finally, Martha Jolly, a resident maintenance foreman for SCDOT, testified (1) the road was resurfaced the day before the accident, (2) she was on the site the day before the accident and saw warning signs

jurisdiction, we are not at liberty to disregard the rule that, unless issues are timely raised to the trial court, we cannot address them on appeal. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). We further note that after venue was changed to Fairfield County, SCDOT unsuccessfully moved for a change of venue and did not appeal the order denying its motion.

10. This section provides that "[i]n all actions brought pursuant to this chapter when an alleged joint tortfeasor is named as party defendant in addition to the governmental entity, the trier of fact must return a special verdict specifying the proportion of monetary liability of each defendant against whom liability is determined." S.C.Code Ann. § 15–78–100(c) (Supp.2003).

11. *Thomasko v. Poole,* 349 S.C. 7, 12, 561 S.E.2d 597, 599 (2002).

12. S.C.Code Ann. § 56-5-1520 (1991 and Supp.2003).

13. *Id.* § 56-5-1810 (1991).

erected on the road, and (3) such signs normally stay up a few days after the work is done. Although there was some testimony suggesting the signs were not easily visible when the accident occurred, the evidence to the contrary created a jury question on this issue.[14] A finding by the jury the signs had been in place could have led to the inference that Brown had failed to keep her vehicle under control and adjust her speed to conditions of which she either was or should have been aware.

Similarly, there was evidence the hazards were open and obvious. Dr. Robert B. Roberts, who investigated the scene seventeen days after the accident testified he could observe clearly where the road had been re-surfaced. Dr. Larry Josey, the Jeters' expert witness, opined a reasonable person could visually recognize the road had been re-surfaced and Brown "should have been able to tell that this is a new piece of roadway." In addition, Quantilla Jeter testified she could see where the road construction started when she arrived at the scene. Even if SCDOT had not installed adequate warning signs, then, the jury could have found Brown, in overlooking readily apparent hazards in the roadway, had failed to maintain a proper lookout.[15]

Viewing the evidence in the light most favorable to SCDOT, we agree there is more than one reasonable inference regarding whether Brown was at fault in the accident. We therefore hold that, under South Carolina Code section 15–78–100(c), the trial court should have given the jury the opportunity to apportion fault among all tortfeasors, including Brown.

3. It appears from SCDOT's brief that the question of whether the trial court erred in refusing to charge the defense of unavoidable accident becomes an issue in this appeal only if

14. *See Brown v. Smalls*, 325 S.C. 547, 558, 481 S.E.2d 444, 450 (Ct.App.1997) ("Ordinarily, the negligence of a party is a question of fact for the jury.").

15. *See Brown v. Howell*, 284 S.C. 605, 609, 327 S.E.2d 659, 661 (Ct.App.1985) (holding it was proper to deny the plaintiff's motion for a directed verdict because the jury could reasonably infer that the plaintiff "did not exercise due care for his own safety in that he failed to keep a proper lookout, drove too fast for conditions, violated the laws regulating traffic at a stop intersection, and failed to take evasive action").

the directed verdict in favor of Brown is affirmed.[16] We have reversed the directed verdict; therefore, we do not reach the issue of whether the trial court should have charged the defense of unavoidable accident.

**AFFIRMED IN PART, AND REVERSED IN PART, AND REMANDED.**

ANDERSON, J., and CURETON, A.J., concur.

---

16. SCDOT's brief reads in pertinent part: "If the lower court was correct in directing a verdict and/or striking SCDOT's defenses that Phyllis Brown's negligence caused the accident, then clearly the court at the very least erred in refusing to charge the law on unavoidable accident."